CONSOLIDATED VA. MIN. CO. (KINNEY v.). See Case No. 7,827.

---

## Case No. 3,136.

### CONSTANT v. ALLEGHENY INS. CO.

[3 Wall. Jr. 313;[1] 1 Am. Law Reg. (N. S.) 116.]

Circuit Court, W. D. Pennsylvania. Nov., 1861.

INSURANCE — PAROL AGREEMENT—AUTHORITY OF CORPORATE OFFICERS.

1. Though by the charter of an insurance company it is provided that "every contract, bargain, and other agreement," in execution of the powers of the company, "shall be in writing or print, under the corporate seal, and signed by the president, or, in his absence or inability to serve, by the vice president or other officer, &c., and duly attested by the secre-

---

[1] [Reported by John William Wallace, Esq., and here reprinted by permission.]

tary or other officer," &c., a parol agreement as to the terms on which a policy shall be issued, made by the president secretary, or other general agent of the company may, nevertheless, be enforced specifically in a court of equity, which, in case of a previous loss, will be by a decree for the amount which would be due upon a policy duly executed.

[Applied in Franklin Fire Ins. Co. v. Colt, 20 Wall. (87 U. S.) 566.]

2. But a mere collateral agreement, which does not involve the execution of a policy of insurance, is not within the scope of the general authority of an officer or agent of such a corporation, and cannot be enforced.

3. The plaintiff, through a broker, applied to the defendants for an insurance on a boat for a definite amount, and was informed that "it would be taken." The defendants subsequently sent to the broker their own policy for a part, and the policies of three other companies for the residue, executed by an agent for the latter companies. The broker, on receiving the policies, wrote, in the absence of his principals, to the defendants, to say that he doubted whether the agency policies would be accepted, alleging as a reason, that the particular agent had not a good reputation for "settling losses," and added, "I don't know whether it is your custom to guarantee the offices you insure in, or not; if you do, I may prevail on" the plaintiff "to hold the policies." The secretary of the defendants in reply, wrote: "In handing the policies" to the plaintiff, "you can say that if the boat is not insured in offices satisfactory to him, we will have them cancelled; but, though they are not re-insurances, yet in case of loss we feel ourselves bound for a satisfactory adjustment. We deem the companies good, and if any parties can settle with them, we can." On the faith of this letter the plaintiff closed the transaction. One of the substituted companies afterwards became insolvent, and, a loss having occurred, a special action on the case was brought against the defendant: Held, (1.) That the secretary of the defendants had no general authority to bind them by a guarantee of the solvency of the substituted companies; and, (2.) if he had, his letter did not amount to this, but only to an undertaking for a satisfactory determination of the amount of the loss, and its apportionment between the insurers.

Constant and others, including the captain of it, Bowman, were owners of a steamboat, upon which they were about to make an insurance. One Springer was a correspondent of the Allegheny Insurance Company of Pittsburg, the defendant in the case, and in the habit of getting customers for it, which he had authority to do, but he had no authority to make contracts for the company. Captain Bowman, for himself and in behalf of the other owners, applied to Springer, as agent of the Allegheny Company, to get an insurance of $20,000 on the boat. Springer communicated with the company by telegraph, to know if they would take the risk, and received for answer "that it would be taken;" and Springer so informed Bowman, who requested Springer to write to defendants to take the risk. Springer did so, informing them of the names of the owners, and their respective interests. The defendants agreed to take the risk, and sent to Springer five policies of insurance, covering the risk of $20,000: two of them of $2,500 each, in favor of Captain Bowman, executed by themselves; one for $5,000, in favor of Bowman, executed by the "Pennsylvania Insurance Company;" one for $5,000, in favor of plaintiff, executed by the "Quaker City Insurance Company;" and the other for $5,000, executed by the "Commonwealth Insurance Company" in favor of the remaining owner, one McGhee.

When these five policies were received the owners and the boat were absent on their voyage, and Springer wrote to the secretary of the Allegheny Insurance Company as follows: "Your favor, together with the policies on the steamer, came to hand. I was very much disappointed in receiving the three policies from agencies. Altogether I am very much afraid, when the boat comes back, that the owners will not have them. They expected them to be taken in Pittsburg offices, and they were issued by Mr. Carrier, whose reputation for settling losses is not very good in this city. As far as my own knowledge goes, he never settles without a law suit. I don't know whether it is your custom to guarantee the offices you insure in, or not; if you do, I may prevail on them to hold the policies. I will keep the policies until they return, and do the best I can to get them to keep them; but I know the owners are very much prejudiced against the 'Commonwealth' and 'Quaker City' (they have agencies here), and if they will not keep them, I can only return them. I can say no more until the boat returns."

To this letter the secretary of the company defendant replied, as follows: "In handing the policies to the owners of the boat, you can say, that if she is not insured in offices satisfactory to them, we will have them cancelled; but though they are not reinsurances, yet in case of loss we will feel ourselves bound for a satisfactory adjustment. We deem the companies good, and if any parties can settle with them we can."

When Springer presented the policy of insurance executed by the Quaker City Insurance Company, to the plaintiff, he objected to it. Springer then informed him of the contents of the letter aforesaid, upon which the plaintiff "gave his premium note for $750, and the matter was closed."

It may be pertinent to observe, that by legislative enactment, insurance companies in Pennsylvania, except in cases of special charters, are "empowered to make, execute, and perfect such contracts, bargains, agreements, policies, and other instruments as shall or may be necessary, and as the nature of the case may require, and every such contract, bargain, policy, and other agreement shall be in writing or print, under the corporate seal, and signed by the president, or in his inability, by the vice president," &c., and that subject to this act the Allegheny Insurance Company, the present defendant,

held its charter. Act April 2, 1856, § 10; Act Jan. 29, 1859, (P. L. p. 10.)

Soon after the insurance effected by the correspondence and acts already mentioned, the steamboat was lost; and the Quaker City Company having become wholly insolvent, this suit, a special action on the case was instituted at law, to recover the amount from the defendant, the Allegheny Company.

The facts as above stated, were found on a special verdict; judgment being to be entered for $5,265.83, if the court thought that they made out a case for the plaintiff, otherwise for the defendant.

GRIER, Circuit Justice. To entitle the plaintiff to judgment on this verdict, he must show:·

1st. That on the facts as found the secretary of the insurance company could legally bind the company to guarantee an insurance made by another insurance company.

2d. That such a promise or agreement was made, in such form as to support an action at law against the corporation.

By its act of incorporation this company could make insurance which would be legally valid only by a policy attested by the president, secretary, and the seal of the corporation. Yet, before such instruments are attested in due form, the president or secretary, or whoever else may act as a general agent of the company, may make agreements, and even parol promises, as to the terms on which a policy shall be issued, so that a court of equity will compel the company to execute the contract specifically (see Commercial Mut. Ins. Co. v. Union Mut. Ins. Co., 19 How. [60 U. S.] 318); and where the loss has happened, to avoid circuity of action the chancellor will enter a decree directly for the amount of the insurance for which the company ought to have delivered their policy, properly attested.

The secretary of the company, in this case, replied by telegram to one sent by Springer, who acted as a broker or mutual agent of the parties, not that the defendants would themselves take the whole risk of $20,000, but "that it should be taken." The company showed their construction of their undertaking by transmitting policies to the amount requested, equally divided among four insurance companies, as negotiated by defendants, and divided among the three several owners of the boat, according to their respective interests. The objection made by the insured was not to the manner in which the risk was divided, but that the agent of one of the companies (the Quaker City), had the character· of being a very troublesome person to deal with in case of a loss which would require adjustment.

Assuming the representation of the secretary, that in case of loss "we will feel ourselves bound for a satisfactory adjustment," is an agreement to guarantee the solvency of the Quaker City Insurance Company, had the secretary authority to make a simple or parol contract to bind his principal to guarantee the solvency of another company? We think he had not. Every promise to make a policy of insurance under the seal of the company, and the terms on which it will be done, falls necessarily within the scope of the authority confided to such agent; but any other merely collateral promise or representation, which does not involve the execution of a policy of insurance, is not within the scope of his authority, as agent, because it is not strictly within the scope of the powers granted to the corporation.

Whether the officers of the corporation could, by covenant, duly executed, but not in the form of a policy of insurance, bind the company to perform such a contract, we need not inquire. This is a suit at law, and the.plaintiff must show a legal obligation, executed according to the forms required by the law, which confers the corporate powers on the defendant. And if it were a bill in equity, the chancellor would decree only a specific execution, to wit, the delivery of an instrument of writing, executed and attested according to law, and such as was within the powers of the corporation as provided by their charter.

But assuming that this parol promise, as stated in the secretary's letter, would support a suit at law against the company, is there a promise to guarantee the solvency of the Quaker City, or any of the three other companies who joined in taking this risk of $20,-000? The parties did not complain that the defendants would not take the whole risk on themselves, but had it negotiated and divided among other companies. The objection was not made to the solvency of any of the companies, but on the anticipated difficulties of adjustment in case of a loss occurring. The undertaking of the secretary is not that the defendant shall pay the amount of the loss, but to take the trouble of adjusting the loss with this captain's agent. This might be an easy matter for the defendants' officers to perform, as the very same adjustment would have to be made with and for themselves, and other companies who were not infested by such an agent.

The adjustment of a loss is defined to be the "settling and ascertaining of the indemnity which the assured, after all allowances and deductions made, is entitled to receive under the policy, and fixing the portion which each underwriter is liable to pay."

Now, the direction of the secretary to Springer is to tender the policies, and if they are not satisfactory to the owners to cancel them; stating that they are not reinsurances, and that "we feel ourselves bound" not to pay the losses if the other insurers should be insolvent, but "for a satisfactory adjustment," and adding, "we deem the companies good, and if any parties can settle with them we can." Here is no

guarantee. The whole length and breadth of this undertaking is a satisfactory adjustment of the loss, and no more. [The facts as found by the jury, do not, therefore, support the claim alleged in the declaration. The defendants are consequently entitled to judgment for the defendant.][3]

Judgment for the defendant.